IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JUN 9 2026 PM3:08
FILED - USDC - NDTX - LU

UNITED STATES OF AMERICA

v.

MARIO MENDOZA (10)

No. 5:26-CR-027-H-(10)

# FACTUAL RESUME

In connection with Mario Mendoza's plea of guilty to the offense in Count One of the Indictment, Mendoza, the defendant; Slater Elza, the defendant's attorney; and the United States of America (the government) stipulate and agree to the following.

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Indictment, charging a violation of Title 18, United States Code, Section 371, that is, Conspiracy to Transport Stolen Property in Interstate Commerce, the government must prove the following elements beyond a reasonable doubt:[1]

*First*: That the defendant and at least one other person agreed to commit the crime of Transportation of Stolen Property in Interstate Commerce, as charged in the Indictment;

*Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third*: That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Indictment, in order to accomplish some object or purpose of the conspiracy.

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2024).

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member of the conspiracy becomes the agent of every other member.

The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

To prove a violation of Title 18, United States Code, Section 2314, that is, Interstate Transportation of Stolen Property, the government must prove each of the following elements beyond a reasonable doubt:[2]

---

[2] Fifth Circuit Pattern Jury Instruction 2.89 (5th Cir. 2024).

*First*: That the defendant transported or caused to be transported in interstate or foreign commerce items of stolen property as described in the indictment;

*Second*: That at the time of such transportation, the defendant knew that the property had been stolen, converted, or taken by fraud; and

*Third*: That the property had a value of $5,000 or more.

Knowledge or reasonable foreseeability of interstate or foreign transport is not required to convict. It is enough if the defendant set in motion a series of events which in the normal course led to the transportation.

"Property" means goods, wares, merchandise, securities, or money.

The word "stolen" means all wrongful and dishonest taking of property with the intent to deprive the owner of the rights and benefits of ownership, temporarily or permanently.

The phrase "taken by fraud" means to deceive or cheat someone out of property by means of false or fraudulent pretenses, representations or promises.

The word "value" means the face, par, or market value, whichever is the greatest and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof.

## STIPULATED FACTS

1. Mario Mendoza admits and agrees that from on or about a date unknown to the grand jury and continuing through on or about the date of the Indictment, in the Lubbock Division of the Northern District of Texas, and elsewhere, he did knowingly and intentionally combine, conspire, confederate, or agree with his co-conspirators named in the Indictment and with persons known and unknown to the grand jury, to commit an offense against the United States, that is, Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314. All in violation of Title 18, United States Code, Section 371.

2. The Permian Basin, a vast sedimentary shale basin located in West Texas and Southeastern New Mexico, currently produces an estimated 14 million barrels of oil per day. According to the U.S. Energy Information Administration, ten counties in the Permian Basin account for 93% of U.S. oil production growth since 2020. The region encompassing Lea and Eddy Counties, the situs for much of the oil theft in this case, accounted for much of the increase in production between 2020 and 2024. West Texas Intermediate ("WTI") is the benchmark used to price crude oil in the Permian Basin and much of the United States.

3. Louis George Edgett conducted business on at least four properties in and near Eddy and Lea Counties in New Mexico. Edgett and a relative known to the grand jury leased one of the properties, the "Government E #001," from the United States of America, and Edgett leased the "Keohane B Federal #2 and #3" from the United States of America. He leased the "Sarah Sue #002 and #003" from the State of New Mexico. Edgett also leased property on Maddox Road at and near Highway 62 in New Mexico from a private individual. Edgett maintained frac and oil tanks on the properties.

4. Mendoza and others stole crude oil from oil producers in the Eastern New Mexico region of the Permian Basin and transported the stolen crude oil to the frac and oil tanks Edgett maintained in the region. Brenden Floyd Strickland facilitated the delivery of stolen crude oil to the oil and frac tanks.

5. Mendoza and others had an agreement that Edgett would pay them in cash for the stolen crude oil. Once Mendoza transferred the stolen oil into Edgett's tanks, Edgett and/or Strickland paid him in cash for the stolen crude oil at prices significantly below WTI pricing.

6. In 2023 and 2024, a number of New Mexico oil producers began reporting stolen oil. One of the oil producers put up a camera, which captured drivers for McNabb Services, Mendoza's employer, repeatedly visiting one of Edgett's sites. McNabb Services provided hauling services in Lea County, New Mexico, for oil and gas producers in the region.

7. Law enforcement agents interviewed Mendoza thereafter. He said that he was responsible for transporting oil for a local producer between their sites. The McNabb truck he drove held 200 barrels of oil and he should have been transporting 200 barrels from one site to another. He, however, stole some of the oil for Edgett. Mendoza said he would withhold some of the oil he should have transported between sites and sell it to Edgett and Strickland. Other times, he would bring a full tanker load—200 barrels of stolen oil—to Strickland. He stated that Strickland knew where the stolen oil came from. Below are screenshots captured from Strickland's phone of an exchange between Mendoza and Strickland regarding the intake of multiple loads of stolen crude oil to Edgett's tanks on August 1, 2023:



From: +15756314823 Brenden (owner)
To: +15753437014 Mario

Hell yeaaaaa. Awesome

Priority: Normal

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| +15753437014 Mario | 8/1/2023 3:58:41 AM(UTC-6) | 8/1/2023 3:58:52 AM(UTC -6) | |

Status: Sent

Platform:

8/1/2023 3:58:40 AM(UTC-6)

From: +15753437014 Mario
To: +15756314823 Brenden (owner)

Heading over there

Priority: Normal

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| +15756314823 Brenden | | 8/1/2023 3:59:23 AM(UTC -6) | |

Status: Read

Platform:

8/1/2023 3:59:20 AM(UTC-6)

From: +15753437014 Mario
To: +15756314823 Brenden (owner)

Right now

Priority: Normal

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| +15756314823 Brenden | | 8/1/2023 3:59:29 AM(UTC -6) | |

Status: Read

Platform:

8/1/2023 3:59:29 AM(UTC-6)

From: +15756314823 Brenden (owner)
To: +15753437014 Mario

Bet. There is space in tank 2 on the 500's, just keep a close eye on it please.

Priority: Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15753437014 Mario | 8/1/2023 4:00:47 AM(UTC-6) | 8/1/2023 4:00:50 AM(UTC-6) | |

Status: Sent

Platform:

8/1/2023 4:00:46 AM(UTC-6)

From: +15753437014 Mario
To: +15756314823 Brenden (owner)

Al have a load tonight and it's from the lact

Priority: Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15756314823 Brenden | | 8/1/2023 11:04:57 PM(UTC-6) | |

Status: Read

Platform:

8/1/2023 11:04:40 PM(UTC-6)

From: +15756314823 Brenden (owner)
To: +15753437014 Mario

Betttt. How much bbls?

Priority: Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15753437014 Mario | 8/1/2023 11:05:04 PM(UTC-6) | 8/1/2023 11:05:08 PM(UTC-6) | |

Status: Sent

Platform:

8/1/2023 11:05:03 PM(UTC-6)

From: +15753437014 Mario
To: +15756314823 Brenden (owner)

Hopefully I can pull 200

Priority: Normal

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| +15756314823 Brenden | | 8/1/2023 11:06:20 PM(UTC-6) | |

Status: Read

Platform:

8/1/2023 11:05:23 PM(UTC-6)

From: +15753437014 Mario
To: +15756314823 Brenden (owner)

Am loading right now

Priority: Normal

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| +15756314823 Brenden | | 8/1/2023 11:06:20 PM(UTC-6) | |

Status: Read

Platform:

8/1/2023 11:05:49 PM(UTC-6)

From: +15756314823 Brenden (owner)
To: +15753437014 Mario

Hell yea. You think you will have more tn or just that one?

Priority: Normal

| Participant | Delivered | Read | Played |
| --- | --- | --- | --- |
| +15753437014 Mario | 8/1/2023 11:06:43 PM(UTC-6) | 8/1/2023 11:06:48 PM(UTC-6) | |

Status: Sent

Platform:

8/1/2023 11:06:43 PM(UTC-6)

From: +15753437014 Mario
To: +15756314823 Brenden (owner)

Am gonna be here all night if they have me pulling from lact on 2nd load I can get 200 more ..

Priority: Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15756314823 Brenden | | 8/1/2023 11:08:28 PM(UTC-6) | |

Status: Read
Platform:

8/1/2023 11:07:43 PM(UTC-6)

From: +15756314823 Brenden (owner)
To: +15753437014 Mario

Oooo love to hear it

Priority: Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15753437014 Mario | 8/1/2023 11:08:44 PM(UTC-6) | 8/1/2023 11:09:19 PM(UTC -6) | |

Status: Sent
Platform:

8/1/2023 11:08:44 PM(UTC-6)

8. Investigation showed that Strickland generally paid Mendoza between $10 and $15 per barrel for the stolen crude oil Mendoza brought to him in 2023 and 2024. During the same time frame, WTI was trading at an average of $80.39. These facts demonstrate the disparity in the price between what Strickland paid Mendoza for the stolen oil and WTI, which would be the approximate fair market value of the oil.

9. Investigation further showed that Christopher Frederick Harris, an employee of Randell Wayne Reid and James Darrell Reid, would pick up the stolen crude

oil from Edgett's tanks in New Mexico and transport it to the Reids's tanks in Seminole, Texas. The Reids paid Edgett significantly below WTI for the stolen crude oil. The Reids then turned around and sold the stolen crude oil to mid-stream buyers at prices below WTI.

10. Mendoza admits and agrees that his actions were part of a conspiracy to transport stolen crude oil in interstate commerce, that is, to transport stolen crude oil from New Mexico to Seminole, Texas, within the Lubbock Division of the Northern District of Texas. He admits and agrees that he and his conspirators committed the overt act of transporting stolen crude oil to Edgett's property. That stolen oil was then taken across the New Mexico-Texas state border in interstate commerce. Mendoza admits that he knew the crude oil, which was valued in excess of $5,000, was stolen at the time it was transported in interstate commerce.

11. Mendoza admits and agrees that he joined in the conspiracy willfully, knowing of the unlawful purpose of the conspiracy, and with intent to further the unlawful purpose.

12. Finally, Mendoza admits and agrees that he committed all the essential elements of the offense alleged in Count One of the Indictment. This factual resume is not intended to be a complete accounting of all the facts and events related to the offenses charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One.

AGREED TO AND STIPULATED on this 9th day of June, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

MARIO MENDOZA
Defendant

ANN HOWEY
Assistant United States Attorney
Texas State Bar No. 24032312
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: 806-472-7351
Facsimile: 806-472-7394
E-mail: ann.howey@usdoj.gov

SLATER ELZA
Attorney for Defendant