JUN 26 2026 PM3:45 FILED - USDC - NDTX - LU

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 5:26-CR-027-H(06) |
| GYARDO GONZALEZ (06) | |

## FACTUAL RESUME

In connection with Gyardo Gonzalez's plea of guilty to the offense in Count One of the Indictment, Gonzales, the defendant; Brandon Beck, the defendant's attorney; and the United States of America (the government) stipulate and agree to the following.

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Indictment, charging a violation of Title 18, United States Code, Section 371, that is, Conspiracy to Transport Stolen Property in Interstate Commerce, the government must prove the following elements beyond a reasonable doubt:[1]

*First*: That the defendant and at least one other person agreed to commit the crime of Transportation of Stolen Property in Interstate Commerce, as charged in the Indictment;

*Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third*: That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the Indictment, in order to accomplish some object or purpose of the conspiracy.

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2024).

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member of the conspiracy becomes the agent of every other member.

The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him or her for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part.

The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

To prove a violation of Title 18, United States Code, Section 2314, that is, Interstate Transportation of Stolen Property, the government must prove each of the following elements beyond a reasonable doubt:[2]

[2] Fifth Circuit Pattern Jury Instruction 2.89 (5th Cir. 2024).

*First*: That the defendant transported or caused to be transported in interstate or foreign commerce items of stolen property as described in the indictment;

*Second*: That at the time of such transportation, the defendant knew that the property had been stolen, converted, or taken by fraud; and

*Third*: That the property had a value of $5,000 or more.

Knowledge or reasonable foreseeability of interstate or foreign transport is not required to convict. It is enough if the defendant set in motion a series of events which in the normal course led to the transportation.

"Property" means goods, wares, merchandise, securities, or money.

The word "stolen" means all wrongful and dishonest taking of property with the intent to deprive the owner of the rights and benefits of ownership, temporarily or permanently.

The phrase "taken by fraud" means to deceive or cheat someone out of property by means of false or fraudulent pretenses, representations or promises.

The word "value" means the face, par, or market value, whichever is the greatest and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the value thereof.

## STIPULATED FACTS

1. Gyardo Gonzalez admits and agrees that from on or about a date unknown to the grand jury and continuing through on or about the date of the Indictment, in the Lubbock Division of the Northern District of Texas, and elsewhere, he did knowingly and intentionally combine, conspire, confederate, or agree with his co-conspirators named in the Indictment and with persons known and unknown to the grand jury, to commit an offense against the United States, that is, Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314. All in violation of Title 18, United States Code, Section 371.

2. The Permian Basin, a vast sedimentary shale basin located in West Texas and Southeastern New Mexico, currently produces an estimated 14 million barrels of oil per day. According to the U.S. Energy Information Administration, ten counties in the Permian Basin account for 93% of U.S. oil production growth since 2020. The region encompassing Lea and Eddy Counties, the situs for much of the oil theft in this case, accounted for much of the increase in production between 2020 and 2024. West Texas Intermediate ("WTI") is the benchmark used to price crude oil in the Permian Basin and much of the United States.

3. Louis George Edgett conducted business on at least four properties in and near Eddy and Lea Counties in New Mexico. Edgett and a relative known to the grand jury leased one of the properties, the "Government E #001," from the United States of America, and Edgett leased the "Keohane B Federal #2 and #3" from the United States of America. He leased the "Sarah Sue #002 and #003" from the State of New Mexico. Edgett also leased property on Maddox Road at and near Highway 62 in New Mexico from a private individual. Edgett maintained frac and oil tanks on the properties.

4. Gonzalez and others stole crude oil from oil producers in the Eastern New Mexico region of the Permian Basin and transported the stolen crude oil to the frac and oil tanks Edgett maintained there. Brenden Floyd Strickland facilitated the delivery of stolen crude oil to the oil and frac tanks.

5. Gonzalez and others had an agreement that Edgett would pay them in cash for the stolen crude oil. Once Gonzalez transferred stolen crude oil into Edgett's tanks, Edgett and/or Strickland paid him in cash for the stolen crude oil at prices significantly below WTI pricing.

6. At all times relevant to the conspiracy charged in Count One, Gonzalez owned MAG Oilfield Services LLC ("MAG"), an oil-hauling company operating in Eastern New Mexico.

7. In 2023 and 2024, several New Mexico oil producers began reporting oil thefts. One of the oil producers put up a camera, which captured a high volume of activity at Edgett's sites, including MAG trucks repeatedly visiting Edgett's Government E #001 site, including the truck in the photo below. Given that Edgett lacked any oil-production capabilities at the site, it was determined that the MAG truck was delivering, rather than removing, crude oil from the site. In addition, although Edgett represented that the location was a saltwater disposal site, investigators determined that it was being used to receive crude oil rather than saltwater. No saltwater disposal operations were conducted at the site. Rather, saltwater was removed from the site and transported to a saltwater disposal site that conducted such business. Gonzalez admits and agrees that the MAG oil-hauling truck shown in the photo below at the Government E #001 belonged to his company and that his trucks visited Edgett's leased sites to deliver stolen crude oil.



8. Information from another oil producer directed the investigators to Edgett. The investigators confronted him, as well as Strickland, on July 10, 2024, at the Government E #001. Edgett and Strickland admitted they were buying crude oil from oil haulers in the region but maintained that records existed to substantiate the legitimacy of their business activities. Despite those representations, no such records were provided.

9. The agents searched Edgett's and Strickland's cell phone pursuant to search warrants and found thousands of text communications related to delivery of stolen crude oil to Edgett's sites. Below are screenshots of communications between Gonzalez and Strickland regarding the stolen crude oil Gonzalez delivered to Edgett's tanks.






From: +15754415436
To: +15756313387 (owner)

110 plus plus govt e slops. Today

**Priority:** Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15756313387 | | 5/24/2024 4:31:13 PM(UTC-6) | |

**Status:** Read

**Platform:**

5/24/2024 4:29:53 PM(UTC-6)

From: +15756313387 (owner)

Whoot whoot!!

**Priority:** Normal

**Status:** Sent

**Platform:**

5/24/2024 4:30:44 PM(UTC-6)

From: +15754415436
To: +15756313387 (owner)

970 last month
1300 total this month

**Priority:** Normal

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +15756313387 | | 5/31/2024 9:44:09 PM(UTC-6) | |

**Status:** Read

**Platform:**

5/31/2024 7:59:05 PM(UTC-6)




9. Investigation showed that Strickland generally paid Gonzalez around $15 per barrel for the stolen crude oil Gonzalez brought to him. During the same time frame, WTI was trading at an average of $80.39. These facts demonstrate the disparity in the price between what Strickland paid Gonzalez for the stolen oil and WTI, which would be the approximate fair market value of the oil.

10. Investigation further showed that Christopher Frederick Harris, an employee of Randell Wayne Reid and James Darrell Reid, would pick up the stolen crude oil from Edgett's tanks in New Mexico and transport it to the Reids' tanks in Seminole, Texas. The Reids paid Edgett significantly below WTI for the stolen crude oil. The Reids then turned around and sold the stolen crude oil to mid-stream buyers at prices below WTI.

11. Gonzalez admits and agrees that his actions were part of a conspiracy to transport stolen crude oil in interstate commerce, that is, to transport stolen crude oil from New Mexico to Seminole, Texas, within the Lubbock Division of the Northern District of Texas. He admits and agrees that he and his conspirators committed the overt act of transporting stolen crude oil to Edgett's property. That stolen oil was then taken across the New Mexico-Texas state border in interstate commerce. Gonzalez admits that he

knew the crude oil, which was valued in excess of $5,000, was stolen at the time it was transported in interstate commerce.

12. Gonzalez admits and agrees that he joined in the conspiracy willfully, knowing of the unlawful purpose of the conspiracy, and with intent to further the unlawful purpose.

13. Finally, Gonzalez admits and agrees that he committed all the essential elements of the offense alleged in Count One of the Indictment. This factual resume is not intended to be a complete accounting of all the facts and events related to the offenses charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One.

AGREED TO AND STIPULATED on this 26th day of June, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

GYARDO GONZALEZ
Defendant

ANN HOWEY
Assistant United States Attorney
Texas State Bar No. 24032312
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: 806-472-7351
Facsimile: 806-472-7394
E-mail: ann.howey@usdoj.gov

BRANDON BECK
Attorney for Defendant